### DIXON et al. v. HAWKINS, Adm'x.

No. 26296. June 9, 1936.

Rehearing Denied Oct. 20, 1936.

Application for Leave to File Second Petition for Rehearing Denied Nov. 24, 1936.

W. H. Brown, J. W. Dixon, pro se, and Champion, Champion & Fischl, for plaintiffs in error

Sigler & Jackson, for defendant in error.

CORN, J. Louis Fischl was appointed administrator of the estate of Martha Pratt, deceased, by the county court of Carter county, and gave his bond with the Globe Indemnity Company as surety. At the end of this matter there was an order entered by the county court of Carter county in which it was ordered and directed that said administrator pay to Louis Perkins, within 30 days from date of said order, the sum of $1,138.61. The administrator failed to pay this sum, and Pauline Hawkins, as the administratrix of the estate of Louis Perkins, deceased, and on the 28th day of November, 1933, filed her suit in the district court of Carter county, against Louis Fischl, administrator of the estate of Martha Pratt, deceased, and the Globe Indemnity Company.

Her petition is in the usual form, alleging the death of Louis Perkins; the appointment of the administrator; and alleging that Louis Fischl had been appointed administrator of the estate of Martha Pratt, deceased; that he executed his bond, a copy of which was attached to the petition; alleging that the county court had settled the accounts of Louis Fischl, administrator; and

that he had failed to pay the amount due, which was $1,138.61, and prayed a judgment against said Louis Fischl and his bondsmen for said sum.

There were some preliminary motions filed and Fischl filed an answer, the first one being a general denial, then an amended answer in which Fischl sets up that Louis Perkins in his lifetime made an assignment to D. T. Lacy of $200 of said sum, and that the said Lacy had assigned his rights to J. Woody Dixon. He further alleges that thereafter Perkins had assigned his entire interest in the estate of J. Woody Dixon, and he prayed that J. Woody Dixon be made a party defendant in this cause. The plaintiff then filed her motion to strike all that part of the answer wherein the defendant attempted to plead that J. Woody Dixon, or any other person, was a necessary party in said case and set up in said motion that neither Dixon nor any other person was a necessary party therein.

She also filed a motion for judgment on the pleadings for the reason and upon the theory that Fischl admitted the allegations of the plaintiff's petition, his appointment as administrator, execution of bond, and also admitted that the county court had made final distribution and had directed him to pay to Louis Perkins $1,138.61. However, the district court made an order overruling all these motions and required Dixon to be made a party. Dixon then filed his answer, in which he pleaded the assignments.

A part of the reply to the answers of defendants is a general denial, and for further reply plaintiff alleges that the assignment p'eaded by said defendants herein is null and void and of no force and effect; that the plaintiff's intestate, Louis Perkins, was an ignorant and uneducated negro; that the defendant J. Woody Dixon is a practicing attorney, and said defendant Dixon represented to said Louis Perkins at the time of the alleged assignment thereof that the said Louis Perkins had only a small sum of money due him from the estate of Martha Pratt, deceased, that he had a very slim chance of ever recovering anything out of said estate, and represented to him that more than likely the said Louis Perkins would not succeed in recovering anything from the estate of Martha Pratt, deceased; that at the time said alleged assignment was executed, a suit was pending in the Supreme Court which was an appeal from the judgment of the district court of Carter county, wherein that court had decreed the said Louis Perkins to be one of the heirs

of Martha Pratt, deceased; that the said J. Woody Dixon was fully advised of the law and was schooled in the science of law and well knew that there was no probability that said case would be reversed; and said Louis Perkins was uneducated and unschooled and was led to believe by said J. Woody Dixon that in all probability he might not recover in said case and was led to believe by said J. Woody Dixon he had only a small sum of money due him even if he prevailed in said suit, and said Louis Perkins believed, relied upon, and acted upon the statements of J. Woody Dixon aforesaid; and said statements of said Dixon were false and were made with the purpose of deceiving and misleading the said Louis Perkins and for the purpose of inducing said Louis Perkins to sell and assign to the said J. Woody Dixon all his right, title, and interest in said estate, and said Louis Perkins relied upon said statements aforesaid in making said assignment.

Amendment to answer is as follows:

"Comes now the defendant, J. Woody Dixon, and leave of the court being had, files this amendment to his original answer filed herein and for such amendment alleges and states in addition to the other matters and things set up in his original answer, that any claim that the plaintiff might have had or any defense against the assignments executed to this defendant and D. T. Lacy is now barred by the two-year statute of limitations and was so barred at the time of the filing of this action."

The issues thus joined, the cause was tried to a jury, resulting in a verdict for the plaintiff. The parties will hereafter be referred to as they appeared in the court below, reverse to the order herein.

The defendant argues the case under two propositions: First. The court erred in overruling the plea of the statute of limitations. Second. The evidence was insufficient to establish plaintiff's cause of action, and the court erred in rendering judgment for the plaintiff.

The record discloses that J. Woody Dixon came into the action by way of an answer in which he asserted that he was entitled to all the money of the estate claimed by Louis Perkins, deceased. In this answer he sets up and relies upon an instrument signed by Louis Perkins, deceased, in which he assigned to said J. Woody Dixon all his right, title, and interest in and to the estate of Martha Pratt, deceased. When this answer was filed by J. Woody Dixon the plaintiff attacked said assignment upon the

ground that it was obtained by fraud and undue influence and misrepresentations of fact and tendered back to said J. Woody Dixon the amount of money he had paid him.

In 37 C. J. 948, section 319, the rule is stated as follows:

"Statutes providing that in an action for relief on the ground of fraud limitation shall run from the time the fraud is discovered apply only as against a party who seeks affirmative relief on the ground of fraud committed by his opponent; they do not apply so as to raise a bar against a party who is seeking merely to defend his rights on the ground that a contract or transaction sought to be enforced by his opponent is fraudulent. Likewise a statute providing that actions for relief against frauds must be commenced within a certain time after the cause of action accrues does not apply where the fraud is set up merely by way of defense and not as a ground for affirmative relief."

In Caples v. Morgan (Ore.) 160 P. 1154, the Supreme Court of Oregon said:

"Complaint is made about permitting the amendment of the answer. It is not shown, however, that the plaintiff was taken by surprise or that her rights were prejudiced thereby. She could not have experienced any injury on that account; for, whereas the original answer demanded a judgment for the excess of damages alleged over what should be found due to the plaintiff by the terms of the lease, the change allowed her to escape any judgment for this possible overplus. Neither can the statute of limitations be urged against a mere defense of the kind here involved. Our statute stating the time within which actions may be brought refers to instances where the party claiming to have been defrauded institutes proceedings on his own behalf for the recovery of damages. It does not contemplate mere resistance of a claim founded upon a contract into which the defendant has been inveigled by the fraudulent conduct of the other contracting parties. The rule is thus stated by Mr. Justice Henshaw in Hart v. Church, 126 Cal. 471, 58 P. 910, 77 Am. St. Rep. 195:

"'It is also true that, where a party seeks relief upon the ground of fraud or mistake, the action must be commenced within three years after the discovery of the facts constituting the fraud or mistake; but a different case is presented where the party who has procured the fraudulent contract, or who seeks to take advantage of it, asks to have it declared valid or to enforce its executory terms, and is thus himself asking affirmative relief. The three-year statute of limitations does not bar the defendant in such a case from objecting to the validity or to the enforcement of the contract upon the ground of fraud. It is not incumbent upon one who has thus been defrauded to go into court and ask relief, but he may abide his time, and, when enforcement is sought against him, excuse himself from performance by proof of the fraud.'

"To like effect are the cases of Evans v. Duke. 140 Cal. 22, 73 P. 732; State v. Tanner, 45 Wash. 348, 88 P. 321; Advance Thresher Co. v. Doak, 36 Okla. 532, 129 P. 736. The injured party is not bound to presume that his adversary will at all events endeavor to enforce the contract which is corrupted with his own fraud, at least beyond what would be justly his due. A wronged individual may safely rest on a mere defense grounded upon the deceit of the other party so long as the contract itself is liable to be enforced. The taint is inherent in the agreement, and as a defense will last as long as the convention it affects."

Under the second proposition argued by the defendant, he makes the statement that the evidence was insufficient to establish plaintiff's cause of action, and the court erred in rendering judgment for the plaintiff. The record discloses the defendant paid only $250 for the assignment.

Statements of people as to the value of what they are about to buy or what they are about to sell are, as a rule, not fraudulent, and when persons deal on an equal footing, this is the rule, but where a lawyer deals with a layman in reference to a matter pending in court, the parties are not on equal footing.

The testimony which was introduced showed that Dixon told Louis Perkins that the money was exhausted and that Louis Perkins had only about $400 coming to him, that the lawsuit and lawyer fees and court costs had taken up his claim and he would not have very much left for himself, if anything, and if he lost the suit he would not have anything, and the chances were that he would lose.

In 26 C. J. 1218, in discussing the rule of statements as to value, the author says:

"* * * Where they are expressed and understood as statements of fact, especially if the speaker professes personal knowledge that his statements are correct, as where he warrants the truth of the statements made; or where the speaker obviously knows or intends that the hearer will rely upon his representations of value, because the hearer has expressly told him so, as where the truth of the speaker's statement was made a controlling element of the transaction, or because confidential relations obtain; and a false representation of value

may be actionable as a misrepresentation of the speaker's opinion. If the parties deal upon unequal terms the rule that misrepresentations of value are nonactionable expressions of opinion does not apply and under such circumstances they will constitute remediable fraud."

In the case of Sutton v. Greiner (Iowa) 159 N. W. 268, we find the following statement:

"The rule on which appellant here relies, which under ordinary circumstances renders representations or statements of value nonactionable, applies only where the parties stand on equal footing, and have equal means of knowledge, and there is no relation of trust or confidence between them. Mattauch v. Walsh Bros. & Miller, 136 Iowa, 225, 113 N. W. 818; Hanson v. Kline, 136 Iowa, 101, 113 N. W. 504; Hetland v. Bilstad. 140 Iowa, 415, 118 N. W. 422; Murray v. Tolman, 162 Ill. 417, 44 N. E. 748; Schumaker v. Mather, 133 N. Y. 590, 30 N. E. 755; Huffstetter v. Buzett, 32 Ind. 293; Grim v. Byrd, 32 Grat. (Va.) 293; Kenner v. Harding, 85 Ill. 270, 28 Am. Rep. 615. Quite in point with the case before us is our own case of Scott v. Burnight, 131 Iowa, 507, 107 N. W. 422. See. also, Fulton v. Fisher, 151 Iowa, 429-437, 131 N. W. 662; Nowlin v. Snow, 40 Mich. 699; Van Vliet v. Crowell, 171 Iowa, 65, 149 N. W. 861."

We have examined the evidence with care, and while the same is conflicting, we feel it is sufficient to support the verdict of the jury and judgment of the trial court. The judgment is therefore affirmed.

OSBORN, V. C. J., and RILEY, BUSBY, WELCH, and GIBSON. JJ., concur. McNEILL, C. J., and BAYLESS and PHELPS, JJ., absent.