## DAVIS v. BAUM et al.

No. 30154. Dec. 9, 1941.

Rehearing Denied Feb. 16, 1943.

*133 P. 2d 889.*

Edward M. Box and John H. Cantrell, both of Oklahoma City, for plaintiff in error.

D. S. MacDonald, Jr., of Durant, and Rittenhouse, Webster, Hanson & Rittenhouse, of Oklahoma City, for defendants in error.

HURST, J. This is an action by plaintiffs, E. C. Baum and C. Dyer, against the defendants, E. D. Davis and A. A. Davis, doing business as A. A. Davis & Company, upon a foreign judgment. From a judgment for the plaintiffs against E. D. Davis only, the latter appeals.

The material facts are these: Defendants entered into a contract with the State Highway Commission of Missouri for the construction of a given strip of concrete highway. Subsequently defendants entered into a subcontract with plaintiffs whereby plaintiffs were to do the subgrading, paving, and shouldering work on a part of said highway. The parties were unable to arrive at a final adjustment of their accounts, and an action was instituted by the plaintiffs in the circuit court of Jackson county, Mo., to recover the balance claimed to be due. The petition was in six counts and the answer of defendants set up certain counterclaims. The cause was tried by a referee, whose findings were in favor of plaintiffs on each of the six counts of the petition and against defendants on their counterclaims. The trial court approved the referee's report, and on January 17, 1931, entered a judgment for plaintiffs for $24,043.76. From that judgment the defendants appealed to the Supreme Court of Missouri. They did not supersede the judgment.

On July 9, 1935, the Supreme Court of Missouri rendered a decision, 85 S.W. 2d 757, the last paragraph of which is as follows:

"We have reviewed the several matters in controversy herein and as stated during the course of this opinion affirm the judgment of the trial court on the various issues except in the instances noted as to which and to the extent indicated the judgments on the first and second counts are reversed and remanded for further proceedings in the trial court in conformity with this opinion to the end that the proper judgment may

be arrived at on each of said counts and the aggregate judgment corrected accordingly."

And the mandate provided that:

"The said cause be remanded to the said circuit court of Jackson county for further proceedings to be had therein in conformity with the opinion of this court herein delivered."

On August 19, 1935, the following minute was entered in the trial court:

"Now on this day the mandate of the Supreme Court of Missouri affirming in part and reversing and remanding in part is now filed herein."

Plaintiffs, on August 2, 1939, filed a dismissal of the second count and a full concession of the counterclaim based on underhaul involved in the first count, and a motion for final judgment in accordance with the mandate. On September 9, 1939, the circuit court entered a judgment providing:

"It is therefore ordered, adjudged and decreed by the court that the plaintiffs do have and recover of and from the defendants the sum of Thirteen Thousand Four Hundred Eighty Nine and 59/100 Dollars, ($13,489.59) with interest thereon from this date at the rate of six per cent (6%) per annum, and for costs of this action, (except costs allowed defendants in the Supreme Court of Missouri) and hereof let execution issue."

Plaintiffs, on October 28, 1939, commenced this action to recover upon the judgment of September 9, 1939. A. A. Davis was not served, and made no appearance. The district court of Oklahoma county rendered a judgment for plaintiffs and against the defendant E. D. Davis in the sum of $15,096.97, from which judgment E. D. Davis appeals. He testified that he has been a resident of Oklahoma county continuously since 1910.

Defendant Davis pleaded and here relies upon the one-year statute of limitations, subdivision 4, sec. 101, O. S. 1931, 12 O.S.A. § 95. He contends: (1) That plaintiffs owned and were in control of a legally enforceable foreign judgment against defendant, entered January 17, 1931, for the very indebtedness sued for here for more than the statutory period of limitations; and (2) that the journal entry of September 9, 1939, did not represent a new and independent judgment of the circuit court of Jackson county, Mo., but was a restatement of a portion of the previous judgment of that court as subsequently affirmed by the Supreme Court of Missouri, or at most was only a recitation of a judgment of the Supreme Court of Missouri, entered July 9, 1935, as evidenced by that court's mandate and opinion filed in the circuit court on August 19, 1935.

These contentions are interrelated, and present but a single question for decision, namely, Was the judgment of September 9, 1939, a new and final judgment which the circuit court of Jackson county had power and authority to render? If it was, the action is not barred, since it was commenced within one year from the date of the rendition of the judgment.

The judgment of January 17, 1931, from which the appeal was taken, was an aggregate or lump sum judgment. The fact that the journal entry recited the various findings of the referee did not make the judgment separable as to each finding.

"A judgment is distinct, not only from the verdict returned by the jury, but also from the findings of the court, even though such findings are incorporated in the same instrument with the judgment." 30 Am. Jur. 823.

See, also, Lee v. Epperson, 168 Okla. 220, 32 P. 2d 309; 33 C. J. 1051; 15 R.C.L. 570; Freeman on Judgments (5th Ed.) § 3.

The pertinent parts of the mandate and opinion of the Supreme Court of Missouri are set forth above. That court affirmed the judgment of the lower court as to certain items which entered into the judgment, reversed it as to others, and remanded the cause for further

proceedings in conformity with the opinion. The opinion required the lower court to retry the case involving the items as to which the judgment was reversed, and to enter a corrected aggregate judgment composed in part of the items as to which the judgment was affirmed.

The laws of Missouri are neither pleaded nor proven, and we therefore assume that so far as they are pertinent to the issues involved they are the same as those of this state. Hinds v. Atlas Acceptance Corporation, 178 Okla. 474, 63 P. 2d 29. By section 549, O. S. 1931, 12 O.S.A. § 975, the Supreme Court may reverse a case in whole or in part. On reversal, either in whole or in part, it may, at its option, render such judgment as the trial court should have rendered, or it may remand the cause to the court below for such judgment. Defendant contends that where the Supreme Court affirms a judgment in part and reverses it in part, the part affirmed is not affected by the reversal of the other part, but becomes final as of, and relates back to, the date of its rendition in the court below. While an affirmance in part and reversal in part may in some cases be given such effect, we think much depends upon the nature of the case in which the judgment was rendered, and upon the kind of judgment rendered.

The law contemplates but one final judgment in an action. Consolidated School District No. 15 of Texas County v. Green, 180 Okla. 567, 71 P. 2d 712; Wells v. Shriver, 81 Okla. 108, 197 P. 460.

It is true that in a number of cases this court has reversed in part and affirmed in part the judgment of the lower court. See Allen v. Allen, 85 Okla. 240, 205 P. 504; Morton v. Roberts, 88 Okla. 263, 213 P. 297; Norris v. Hare, 126 Okla. 214, 259 P. 532; Fuqua v. Watson, 172 Okla. 624, 46 P. 2d 486; Kapsemalis v. Douglas, 177 Okla. 522, 61 P. 2d 211; Leeper, Graves & Co. v. First Nat. Bank, 26 Okla. 707, 110 P. 655. But in all these cases it is to be noted that the judgment was composed of several distinct and separate parts, either as to the subject matter or as to the parties involved, and the affirmance was as to one separable and independent part and the reversal as to another. The action upon which the judgment in the present case was rendered was upon an account, composed of numerous items, but of such a nature as to require one judgment. The mandate and opinion of the appellate court, if given the effect contended for by defendant, would result in two different money judgments rendered on different dates between the same parties in the same action, although the action was brought for one judgment for the whole debt. The confusion resulting from such procedure is obvious, for if two judgments may be so rendered in a given case, a greater number would be permissible, and an action for one debt might result in as many judgments as there are causes of action or contested items involved. The law does not contemplate such a procedure, nor do the mandate and opinion of the Supreme Court of Missouri direct it, or indicate that such a result was intended.

The mandate of the appellate court is the official mode of communicating its judgment to the inferior tribunal. Pyle v. Pennington Grocery Co., 187 Okla. 133, 101 P. 2d 847. When such mandate is issued, it is the duty of the lower court to comply therewith, interpreting the mandate in the light of the appellate court's opinion. Take v. Woodruff, 150 Okla. 73, 300 P. 698.

The trial court correctly construed the mandate and opinion as reversing and remanding the cause for a new trial, but specifically limiting the new trial to certain issues, as is frequently done. Holbrook v. Moore, 177 Okla. 173, 58 P. 2d 865; Yazoo & Mississippi Valley R. Co. v. Scott, 108 Miss. 871, 67 So. 491, L.R.A. 1915E, 239, and note; 4 C. J. 1194; 5 C.J.S. 1448; 2 R.C.L. 287; 3 Am. Jur. 724. When the mandate was filed and spread of record in the lower court, the judgment of January 17, 1931,

necessarily lost its force and vigor as a judgment. Jefferson v. Rust, 155 Iowa, 133, 135 N. W. 613; Farquharson v. Fresno Oil Co., 9 Fed. 2d 515. It was therefore the duty of the circuit court of Jackson county, upon receipt of the mandate and opinion of the Supreme Court, to retry the issues remaining undetermined, and render a corrected judgment, which when entered became and was the final judgment in the case. Fox v. Hale & Norcross, Silver Min. Co., 112 Cal. 568, 44 P. 1022. The fact that plaintiffs dismissed the second count of their petition, and agreed that defendants should be allowed the full amount claimed by them on their counterclaim to the first count, did not change the duty of the trial court to enter a new and corrected judgment, nor did it reinstate in part the first judgment. Jefferson v. Rust, above; Farquharson v. Fresno Oil Co., above. Thus the judgment of September 9, 1939, became the final judgment in the case.

Defendant also cites cases holding that where the judgment is not superseded, execution may be issued or suit brought upon it from and after the date of entry, and that therefore the second judgment being for the exact amount of the items affirmed by the Supreme Court of Missouri, the effect of the action of that court, and of the action of the lower court, was an affirmance of the first judgment, and the action is therefore barred. See Bank of Stockham v. Weins, 12 Okla. 502, 71 P. 1073, Cales v. Smith, 180 Okla. 315, 69 P. 2d 384, and other cases holding that the affirmance of a judgment makes it valid from the date of rendition. These authorities would be in point if the judgment had been affirmed. But defendant cites no case, and we have found none, holding that where, as here, the Supreme Court remands a case for further proceedings which must result in another judgment, a failure to bring an action on the first judgment bars an action on the second.

Defendant seeks to bolster his position by calling attention to the rule that a reversal in part does not affect the lien of the judgment, also to the rule that the surety on a supersedeas bond is not exonerated by a reversal in part. These principles have no bearing upon the question involved in the instant case.

Defendant argues that plaintiff was guilty of laches in failing to procure speedy action in the circuit court after the mandate was filed. But such action could have been procured by defendant if delay was prejudicial to his rights.

Affirmed.

WELCH, C. J., CORN, V. C. J., and OSBORN, GIBSON, and DAVISON, JJ., concur. ARNOLD, J., dissents. RILEY and BAYLESS, JJ., absent.

---

On Rehearing.

ARNOLD, J. (dissenting). This is an action arising in the district court of Oklahoma county, Okla., on a foreign judgment rendered by the circuit court of Jackson county, Mo.

The legal principles pertinent to the determination of the sole question involved herein, in my judgment, are: The time within which an action may be brought on a foreign judgment starts running from the date of the judgment. The law of forum governs.

Where a judgment of the trial court is appealed but not superseded, execution is not stayed. When such a judgment is affirmed, the judgment becomes final as of the date of entry in the trial court.

In the case of affirmance in part and reversal in part, where the judgment is distinctly divisible and separable, the parts thereof affirmed date from the mandate in case of supersedeas; otherwise, such judgments date from original entry.

If, as here, you have an affirmance in part and reversal in part without a specific judgment on the various causes of action stated, but instead thereof, findings of fact and conclusions of law

and a determination by the trial court in each instance as to what the judgment in each instance should be, together with an aggregate judgment rendered, and the reversal requires further proceedings for a correct determination of the judgment as to certain counts, and the voluntary action of the judgment creditor renders further proceedings on the reversed counts unnecessary, but on the contrary subjects the determination of the amount of the aggregate judgment to mere computation, such voluntary action on the part of the judgment creditor relates back and makes the decision an affirmance in toto.

The original action was based on an account and for damages for breach of contract and duty alleged by the plaintiffs in their petition therein. That petition was divided into six separate and distinct causes of action and each cause of action was concluded with a prayer for a judgment in a specific amount. The petition was not concluded with a prayer for an aggregate judgment. A complete history and a somewhat detailed statement is necessary to show how, in the Missouri action, the referee, the trial court, the Supreme Court of Missouri, and the parties therein treated the judgment or judgments involved. The Supreme Court of the State of Missouri, on appeal, handed down a lengthy opinion treating in detailed fashion the facts disclosed by the voluminous record before it and discussed specifically every factual and legal question presented by the record. In the first cause of action the plaintiffs set forth a balance due on their written contract with the defendants for work performed by them under the contract. They also asked for damages, set forth in specific amount, for delay enforced by the failure of the defendants to perform certain duties set out in the contract. They also asked for a specific amount in damages for delay occasioned by the request of the defendants. To this cause of action the defendants set up a so-called counterclaim in which they claimed credit for many thousands of dollars on what was referred to in

the contract between the parties as "underhaul" and for many other items, such as labor paid, repairs bills, chloride, cement sacks, rental of mules, loaned labor, etc. The referee found in favor of the plaintiffs for the sum of $15,964.48, together with interest at the rate of 6% per annum from December 6, 1925, in the amount of $4,810.41. All items claimed by the defendants were denied.

The trial court, in rendering its judgment, specifically set forth in detail the findings and recommendations of the referee as to this and all other counts and said " . . . and the court, having heard arguments of counsel, and having seen, heard, examined and considered said report, evidence and exhibits, and arguments and briefs of counsel, and being now fully advised in the premises, overrules each and every the exceptions, both of the plaintiffs and defendants to said report, and said report is now by the court confirmed as to findings of fact and conclusions of law," and calculated the aggregate of the amounts of the various counts finding that the various sums amounted to $24,043.76, and concluded its judgment in the following manner: "It is therefore ordered, adjudged and decreed by the court that the plaintiffs do have and recover of and from the defendants the sum of twenty-four thousand forty-three and 76/100 (24,043.76) dollars, with interest at the rate of six per cent per annum, and for costs of this action, and hereof let execution issue." The judgment of the court further ordered the payment of referee and transcription fees.

The Supreme Court, after a detailed discussion of the contentions of the parties on this count or judgment, said:

"This concludes our review of the first count and defendants' counterclaim thereto. We affirm the finding and *judgment* of all matters and issues involved in the first count and on defendants' claim for credits against plaintiffs except the refusal of the referee and trial court to hear and determine defendants' claims for credits against plaintiffs for underhaul, and therefore

the *judgment* of the trial court on the first count, *while in all other things affirmed,* must be reversed and remanded in order that the amount due defendants as a credit for underhaul may be ascertained and allowed and the judgment corrected accordingly." (Italics ours.)

As to cause of action number two, which was based on a claim for special work performed by the plaintiffs for the defendants, at their special instance and request, in the sum of $752.25, which issue was found in favor of the plaintiffs and judgment therefor recommended by the referee, the Supreme Court said:

"It is neither alleged nor shown by the evidence that there was an agreement as to rate or basis of pay for this work and there was no evidence whatever that the charges plaintiffs made therefor were reasonable. Plaintiffs merely said that the work amounted to $752. The referee found in favor of plaintiffs, and the trial court *entered judgment,* for the full amount charged by plaintiffs, but *the judgment on this count* must be reversed and the cause as to this count remanded and showing required as to what would be a reasonable charge for the work done."

The third count or cause of action was for a small sum for freight alleged to have been paid by the plaintiffs at the request of the defendants. As to this item, the Supreme Court said, "The evidence supports the finding and defendants do not here, except formally, challenge the judgment which is affirmed."

The fourth count was relative to a promissory note transaction between plaintiffs and defendants. It amounted to a claim for a refund. Relative to this judgment, the Supreme Court said:

"They sue in this fourth count for $515, so expended with interest thereon from January 9, 1928, the date of payment thereof . . . and the judgment thereon in plaintiffs' favor for $515 with interest thereon from January 9, 1928, and we find no reason for disturbing same. Wherefore *the judgment* on the fourth count is affirmed."

The fifth count constituted a claim for an amount alleged to have been agreed upon between the parties as a proper payment from the defendants to the plaintiffs on account of the releasing of a certain portion of the work to be performed by the defendants and on which they would have made a profit. With reference to this claim and judgment the Supreme Court said:

"By this count plaintiffs sue for $1,750, the amount they allege, and by their proof show, was agreed upon. Their claim was allowed in full by the referee and *judgment* therefor entered by the trial court. . . . But from the foregoing it must be apparent that the matter is resolved to an issue of fact which was finally determined by the finding of the referee and *the judgment* of the trial court which must therefore be *affirmed.*"

The sixth count sought recovery for $300 for a certain number of barrels of chloride which the plaintiffs alleged they let defendants have. After a discussion of the evidence on this matter the Supreme Court said, *"The judgment on the sixth count is therefore affirmed."*

As to the contentions of defendants set up in their answer to the effect that they were entitled to retain $8,154.84, asserted to be 10% of the amount due plaintiffs for work done under the contract, defendants claiming that plaintiffs did not "faithfully perform," the Supreme Court said:

"This is disposed of, however, by the finding and ruling of the referee which the trial court approved as follows: 'Under the contract the right to hold this sum ceased whenever the same was paid by the state to defendants and it then became the duty of the defendants to pay same over to plaintiffs. . . . No evidence was offered to show that the state had not paid this sum to defendants. . . . The burden of proof is on defendants. They fail entirely in this. I therefore find that there is not sufficient evidence to support the defendants' claim or set off . . . and the claim should be denied.' We find no occasion to disturb this finding and the action of the trial court thereon which is therefore *affirmed.*"

Finally, the Supreme Court concluded its opinion with the following statement:

"We have reviewed the several matters in controversy herein and as stated during the course of this opinion affirm the judgment of the trial court on the various issues except in the instances noted, as to which and to *the extent indicated* the *judgments* on the *first* and *second* counts are reversed and remanded for further proceedings in the trial court in conformity with this opinion to the end that the *proper judgment* may be arrived at on *each* of said *counts* and the *aggregate judgment corrected* accordingly. It is so ordered."

The opinion of the Supreme Court of the State of Missouri. It is unmistakable July 9, 1935. The mandate was issued August 16, 1935. The mandate was received and filed by the clerk of the circuit court August 19, 1935, and the following minute entered:

"Now on this day the Mandate of the Supreme Court of Missouri affirming in part and reversing and remanding in part is now filed herein."

The mandate of the court is as follows:

"Now at this day, come again the parties aforesaid, by their respective attorneys, and the court here being now sufficiently advised of and concerning the premises doth consider and adjudge that the judgment aforesaid, in form aforesaid, by the said Circuit Court of Jackson County rendered, be in all things affirmed and stand in full force and effect; except the refusal of the referee and the trial court to hear and determine defendant's claim for credit for underhaul as set forth in defendants' counterclaim to the first count of plaintiff's petition, and count two of plaintiff's petition, which two exceptions are reversed, annulled and for naught held and exteemed, and the said appellants are restored to all things which they have lost by reason of that part of said judgment; it is further considered and adjudged by the court that the said cause be remanded to the said Circuit Court of Jackson County for further proceedings to be had therein in conformity with the opinion of this court herein delivered; and that the said appellants recover against the said respondents their costs and charges herein expended and have therefor execution."

Approximately four years after the filing of the mandate of the Supreme Court the plaintiffs filed a dismissal of their second count and full concession of the counterclaim based on "underhaul" in count one. Therein it was stated:

"Come now the plaintiffs and respectfully show to the court that a judgment in this cause was rendered on the 17th day of January, 1931; that subsequently thereto defendants appealed this case to the Supreme Court of Missouri, and the mandate of the decision of the said Supreme Court was received and filed in this Court on August 10, 1935; that the mandate of said Supreme Court affirms the judgment of this Court except as to the claim of the defendants set up in their counterclaim herein for underhaul under the terms and provisions of the contract between the parties in the amount of Ten Thousand Six Hundred Twenty-four and 52/100 ($10-624.52) Dollars, which item was disallowed to the defendants by this Court; and except as to Count 2 of this petition which was by said mandate of the Supreme Court reversed and remanded for a new trial.

"That no new trial of this action or of any part thereof has been in pursuance of said mandate of said Supreme Court, and plaintiffs have elected to and do hereby dismiss their entire second cause of action set forth and contained in their amended petition herein, and plaintiffs have elected to and do hereby concede as an allowance to the defendants under their answer and counterclaim the full amount thereunder for underhaul in the sum of Ten Thousand Six Hundred Twenty-four and 52.100 ($10,624.52) Dollars."

According to the record before us, the next thing that occurred was the entry of another judgment wherein the trial court said that the mandate of the Supreme Court had been presented to it. It is contended by plaintiffs that the judgment entered on this date by the trial court is a new, different, and independent judgment. The entry of

such judgment covering all of the issues on this occasion was in the exact words of the former judgment as to all counts except the first and second and as to the aggregate amount thereof. As to the first count it was corrected to show a credit of the claimed amount of "underhaul." Relative to count number two the court found that it had been dismissed and no judgment was entered on that particular cause of action. This new judgment was concluded in the exact words of the former judgment except as to the aggregate amount as by calculation said amount would be affected by the allowance of the underhaul claim of defendants and the deduction of the amount formerly allowed on cause number two. The interest allowed was determined by calculation. The judgment then stood "corrected" as directed by the Supreme Court of the State of Missouri. It is unmistakable that the parties, and particularly the Supreme Court of the State of Missouri, treated the original judgment of the circuit court as six separate and distinct judgments. The plaintiffs voluntarily conceded the claim of the defendants based on "underhaul" set forth in the first count and by reason of their voluntary action the judgment was subject to correction by mere calculation. The plaintiffs also voluntarily dismissed their claim set forth in count number two. The aggregate amount of the judgment was therefore capable of determination and correction merely by calculation. No further proceedings were necessary after the promulgation of the opinion and mandate of the Supreme Court of the State of Missouri by reason of the voluntary action of the plaintiffs. The judgments rendered in counts 3, 4, 5, and 6 were affirmed in toto by the Supreme Court. The judgment on count number two was reversed and voluntarily dismissed by the plaintiffs, in face of no cross-petition, counterclaim or set-off. The judgment of the trial court on count number one was fully affirmed as to all adverse rulings on contentions of defendants except as to "underhaul" and fully affirmed the judgment of the lower court as to the

claims of the plaintiffs, except as to the aggregate amount thereof which might be affected by the determination of the "underhaul," the full amount of which was later confessed voluntarily by the plaintiffs. As the whole matter stood at the time this case was filed in the district court of Oklahoma county, Okla., there was a final judgment entered in 1935 in the circuit court of Jackson county, Mo., which, according to the opinion of the Supreme Court of the State of Missouri and the voluntary actions of the plaintiffs, needed only to be corrected as to the aggregate amount of two of the six judgments rendered, which was accomplished by mere calculation. The statute of limitations had expired long prior to the time of the institution of this case in Oklahoma.

I, therefore, respectfully dissent.